GERVAIS, APPELLANT, v. ROLFE, RESPONDENT.

(No. 4,466.)

(Submitted January 13, 1920.   Decided February 4, 1920.)

[187 Pac. 899.]

*Election   Contests—Evidence—Burden   of   Proof—Costs—Witnesses—Credibility.*

Election Contest—Illegal Votes—Evidence.
   1.   Where it appears in an election contest that a voter was not a legal one, any person with the requisite knowledge may testify as to the person for whom he voted.
Same—Illegal Votes—Circumstantial Evidence.
   2.   Where it does not appear from direct testimony for what candidate an unqualified voter voted, the fact may be shown by circumstantial evidence.
Same—Evidence.
   3.   A voter who does not remember for whom he voted may be asked for whom he intended to vote, as a circumstance tending to raise a presumption for whom he did vote.
Same—Illegal Votes—Evidence—Admissibility.
   4.   An unqualified voter who could not read or write English was properly permitted to testify that one of the election judges read the names on the ballot to him; that whenever the name of a candidate for whom he wished to vote was read, he placed a cross before the name; that he wanted to vote for contestant; that the election judge told him where to place the mark, and that he voted for contestant.
Same—Illegal Votes—Apportionment Between Contestant and Contestee—When Proper.
   5.   Where it was impossible for the trial court in an election contest to determine from the evidence for whom alleged illegal votes had been cast, its action in apportioning them under the rule approved in *Heyfron* v. *Mahoney*, 9 Mont. 497, was proper.
Appeal and Error—Error in Favor of Appellant.
   6.   From a ruling prejudicial to respondent, appellant cannot complain.
Election Contest—Burden of Proof.
   7.   The certificate of election in the hands of respondent was *prima facie* evidence of his right to the office in contest, and appellant had the burden of proving that respondent received a sufficient number of illegal votes charged by him to have been cast, to change the result.
Witnesses—Credibility—Question for Trial Court.
   8.   A court is not bound to accept a fact as proved merely because a witness has sworn to it; creditable swearing only concluding its judgment.
Costs—Memorandum—When Properly Stricken from Files.
   9.   Costs are recoverable only by virtue of the statute, and in order to recover them, the party making the claim must comply with its provisions; therefore, failure to file the memorandum required by section 7170, Revised Codes, operates as a waiver and justifies the court in striking the cost bill.

Election Contest—Costs—When not Recoverable.
>    10.   Where contestee in an election contest did not file his memorandum
>    of costs until ten days after the court's findings had been filed, it was
>    properly stricken from the files.

ELECTION CONTEST by Emil J. Gervais against F. M. Rolfe.
From judgment for contestee, and an order denying contestant
a new trial, he appeals. Contestee appeals from the judgment
so far as it denies his right to recover his costs. Affirmed.

*Messrs. Norris & Hurd,* for Appellant, submitted a brief and
one in reply to that of Respondent; *Mr. Edwin L. Norris* argued
the cause orally.

The court made an error in failing to find for whom the seven
illegal voters other than Martin Grinolds voted and in applying
the apportionment rule to Coburg precinct as to said seven votes.
In this paragraph we wish to submit that the failure of the court
to find for whom the illegal voters in Coburg precinct voted and
in applying the apportionment rule to Coburg precinct as to
such votes was such an error that entitled the appellant to a
new trial and that the court erred in not granting such new trial.
(29 Cyc. 816; *Brooks* v. *Prescott,* 114 Mass. 392; *Citizens' Bank*
v. *Bolen,* 121 Ind. 301, 23 N. E. 146; *Labonte et al.* v. *Lacasse,*
78 N. H. 489, 102 Atl. 540; *Llewelyn* v. *Levi,* 157 Cal. 31, 106
Pac. 219; *Brown* v. *Macey,* 13 Idaho, 451, 90 Pac. 339; *Black* v.
*Harrison Home Co.,* 155 Cal. 121, 99 Pac. 494.)

Where there are no statutory provisions providing for the con-
testing of elections, courts of equity will assume jurisdiction of
such contests. This rule is stated in *Poe* v. *Sheridan County,* 52
Mont. 279, 157 Pac. 185; *Cadle* v. *Town of Baker,* 51 Mont. 176,
149 Pac. 960, and is supported by the following cases: *Gibson* v.
*Trinity County,* 80 Cal. 359, 22 Pac. 225; *Calaveras County* v.
*Brockway,* 30 Cal. 325; *Dickey* v. *Reed,* 78 Ill. 261; *Hamilton*
v. *Carroll,* 82 Md. 326, 33 Atl. 648; *Tolbert* v. *Long,* 134 Ga. 298,
67 S. E. 828. Inasmuch as there are ample provisions of law in
this state for the contesting of elections of county officers, it may
not be urged that the rule last referred to may be invoked. In
view of the doctrine above stated, we submit that this cause is

a special proceeding authorized by statute and that under no construction may it be considered as an action in equity.

A person who voted without being registered is an illegal voter and may be required to testify in an election contest for whom he voted. (*Black* v. *Pate,* 130 Ala. 514, 30 South. 434; *Montgomery* v. *Dormer,* 181 Mo. 5, 79 S. W. 913; *Van Winkle* v. *Crabtree,* 34 Or. 462, 55 Pac. 831, 56 Pac. 74; *Vallier* v. *Brakke,* 7 S. D. 343, 64 N. W. 180; *Welsh* v. *Shumway,* 232 Ill. 54, 83 N. E. 549; *People, etc.,* v. *Pease,* 27 N. Y. 45, 84 Am. Dec. 242; *Boyer* v. *Teague,* 106 N. C. 571, 11 S. E. 330; *Hanson* v. *Village of Adrian,* 126 Minn. 298, 148 N. W. 276, 277.)

Failure to file a memorandum of costs within the time prescribed by statute acts as a waiver of the right to costs. (15 C. J. 181; *Chapin* v. *Broder,* 16 Cal. 403, 419; *Griffith* v. *Welbanks,* 26 Cal. App. 477, 147 Pac. 986; *Steensland* v. *Hess,* 25 Idaho, 181, 136 Pac. 1124; *Linville* v. *Scheeline,* 30 Nev. 106, 93 Pac. 225; *Hayes* v. *Hutchinson,* 81 Wash. 394, 142 Pac. 865.)

*Messrs. Freeman & Thelen* and *Mr. D. C. Kenyon,* for Respondent, submitted a brief; *Mr. James W. Freeman* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

At the general election held in November, 1918, Emil J. Gervais and F. M. Rolfe were rival candidates for the office of county treasurer of Blaine county. The canvassing board returned that Rolfe received 662 votes and Gervais 661. A certificate of election was issued to Rolfe, and this contest was thereupon instituted. The trial resulted in a judgment in favor of Rolfe, and Gervais appealed from the judgment and from the order denying him a new trial.

The contest involves only the votes cast in two precincts. In the complaint it is alleged that in Wing precinct, where Gervais received 7 votes and Rolfe 39, 5 persons (naming them) who were not registered were permitted to vote, and in Coburg pre-

cinct, where Gervais received 19 votes and Rolfe 29, 8 persons (naming them) who were not registered were permitted to vote, and that all of these 13 votes were cast for Rolfe. In the answer it is admitted that the 13 persons named were not registered, that they voted at the election, and that each voted for a candidate for treasurer, but it is denied that they, or any of them, voted for Rolfe. The court found that of the five illegal votes cast in Wing precinct three were cast for Gervais and two for Rolfe. Appellant concedes that he received two illegal votes in Wing precinct, but complains of the action of the court in charging him with a third—the vote of one Piestraznski, who could not read or write English, and who was assisted in marking his ballot by Charles Anderson, one of the judges of election.

Upon examination of the ballots it was ascertained that the election judge had failed to make the indorsement required by [1–4]  section 555, Revised Codes, and that the ballot could not be identified. Anderson testified that he did not remember for whom the voter voted, and thereupon, over the objection of contestant, Piestraznski was permitted to testify, and he testified, that Anderson read the names on the ballot to him; that, whenever the name of a candidate for whom he wished to vote was read, he placed a cross before the name; that he had known Gervais for five or six years and wanted to vote for him; that the election judge told him where to place the mark; and that he voted for Gervais. It is urged that this evidence was incompetent, for the reason that the witness, having testified that he could not read, could not know for whom he voted.

The rule is established that, whenever it appears that a voter is not a legal elector, any person having requisite knowledge may testify as to the person for whom he voted. (15 Cyc. 424.) The rule is likewise settled that, where it does not appear from direct testimony for what candidate an unqualified voter voted, the fact may be shown by circumstantial evidence (15 Cyc. 425; *Lane* v. *Bailey,* 29 Mont. 548, 75 Pac. 191; McCrary on Elections, sec. 493), and that a voter who does not remember for whom he voted may be asked for whom he intended to vote, not that his intention, as an independent fact, is material, but on the ground

that it is a circumstance tending to raise a presumption for whom he did vote. (*People* v. *Pease,* 27 N. Y. 45, 84 Am. Dec. 242.) We think the evidence was competent, and, taking all the circumstances into consideration, that the court was warranted in its finding that Piestraznski voted for Gervais.

To prove the allegation of his complaint respecting the votes [5–7] cast in Coburg precinct, contestant called 18 admittedly legal voters, each of whom testified that he voted for Gervais. Contestee then called the 8 persons who were not registered, but who had voted in that precinct, and, of these, 7 testified that they voted for Gervais, and one that he voted for Rolfe. The court was thereupon confronted with the anomalous situation that 25 persons had each testified that he voted for Gervais, whereas Gervais received only 19 votes, according to the returns and ballots. The court declared that it was impossible to determine for whom the illegal votes were cast, and thereupon applied the apportionment rule approved by this court in *Heyfron* v. *Mahoney,* 9 Mont. 497, 18 Am. St. Rep. 757, 24 Pac. 93. It is earnestly insisted that the court had no right to refuse to find for whom the illegal votes were cast merely because the evidence concerning the fact was in conflict. The rule contended for is correct as an abstract proposition, but is to be understood as subject to the qualification that there is sufficient evidence to justify a finding. The certificate of election in the hands of Rolfe was *prima facie* evidence of his right to the office (*Sommers* v. *Gould,* 53 Mont. 538, 165 Pac. 599; 9 R. C. L. 1162), and contestant assumed the burden of proving that Rolfe received a sufficient number of illegal votes to change the result (*Stephens* v. *Nacey,* 49 Mont. 230, 141 Pac. 649). It cannot be said that the court did not make any finding. The legal effect of its statement is: "The contestant has failed to prove by a preponderance of the evidence for whom the illegal votes were cast." If the court was justified in that conclusion, it then became its duty to dismiss the contest so far as it involved the votes of Coburg precinct. However, instead of doing so, the court apportioned the illegal votes, and, since this resulted to the prejudice of Rolfe only, contestant cannot complain.

But it is argued that the court could not have been in doubt that Grinolds voted for Rolfe, since his testimony to that effect [8] was not controverted. The credibility of this witness was a matter properly to be passed upon by the trial court, and a court is not bound to accept a fact as proved merely because a witness swears to it. In *Daniels* v. *Granite Bi-Metallic Consolidated Mining Co.*, 56 Mont. 284, 184 Pac. 836, we quoted with approval as follows: "It is a wild conceit that any court of justice is bound by the mere swearing. It is swearing creditably that is to conclude its judgment." But, if we assume, for the purpose of argument, that the court should have deducted this one vote from the total received by Rolfe in Coburg precinct, the result would not have been changed. Contestant was able to produce only 18 qualified electors who voted for him; so that from the evidence before the court it was manifest that he had received at least one illegal vote, and in his proposed findings (No. 12) contestant requested the court to find that J. C. Doyle (one of the voters who was not registered) had voted for him. The court might have deducted one from the total received by each candidate in this precinct, and might then have held that, as to the remaining 6 illegal votes, contestant had failed to prove by a preponderance of the evidence that any one or more of them had been cast for Rolfe. The result would have been that Gervais received 657 and Rolfe 658. Since the court reached the same result in legal effect, the method employed is not material here.

There is a cross-appeal by Rolfe from the judgment in so far [9] as it denies to him the right to recover his costs incurred in the contest proceedings. Costs *eo nomine* were not allowed at common law. They may be recovered, if at all, only by virtue of the statute, and, in order to recover them, the party making the claim must comply with the statute. (*Butte N. C. Co. v. Radmilovich,* 39 Mont. 157, 101 Pac. 1078; *Barrick* v. *Porter,* 56 Mont. 247, 184 Pac. 217.) It has been generally held, under a statute similar to ours, that a failure to file the memorandum

within the prescribed time operates as a waiver and justifies the court in striking out the cost bill. (15 C. J. 181.)

This appeal presents the single question: Was the memorandum filed within the time allowed by law? Section 7170, [10] Revised Codes, provides that a party who claims his costs must deliver to the clerk, and serve on the adverse party within five days after the verdict or notice of the decision of the court, a memorandum of the items of costs, *etc.* In *McDonnell* v. *Huffine,* 44 Mont. 411, 120 Pac. 792, this court determined that the decision of the court referred to in the section above is the findings of fact and conclusions of law made by the court and filed with the clerk, and that the party claiming costs must serve and file his memorandum within five days from the date upon which he has notice that the findings are filed. The record discloses that on April 2, 1919, Rolfe had notice that the findings of the court had been filed. On April 11 he served his memorandum of costs, and on April 12 filed it. Thereafter, on motion, the memorandum was stricken from the files. It is further disclosed that on April 2, 1919, Gervais filed exceptions to the findings, and these exceptions were disposed of on April 8. The contention is made that the filing of the exceptions to the findings operated to stay proceedings until such exceptions were disposed of, but this contention is without merit. There was nothing to prevent the filing of the memorandum or the entry of judgment immediately after the findings were filed. (*Gans & Klein Investment Co.* v. *Sanford,* 35 Mont. 295, 88 Pac. 955.) Since the memorandum was not served nor filed within five days from April 2, 1919, it was properly stricken from the files.

The judgment and order denying Gervais a new trial are affirmed. The judgment upon the cross-appeal of Rolfe is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HURLY and MATTHEWS concur.

MR. JUSTICE COOPER, being absent, takes no part in the foregoing decision.